UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HAMMOND, KENNEDY, WHITNEY & CO., INC., | |
| Plaintiff, | Case No. 16-cv-9808 |
| v. | |
| HONEYWELL INTERNATIONAL, INC., | Judge John Robert Blakey |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Hammond, Kennedy, Whitney & Co., Inc. sued Defendant Honeywell International, Inc. in October 2016, seeking a declaratory judgment that Plaintiff does not have to indemnify Defendant for environmental cleanup costs incurred at a facility that Defendant bought in 2007. [1] at 9. Defendant filed a counterclaim in December 2016 seeking indemnification for the cleanup costs. [18] at 15–18. Plaintiff moved for summary judgment in August 2017. [46]. After the parties completed summary judgment briefing, Defendant moved to strike some of Plaintiff's arguments from its reply brief. [74]. For the reasons explained below, this Court denies Plaintiff's motion and partially grants Defendant's motion.

**I. Background**

The following facts come primarily from Plaintiff's Local Rule 56.1 statement of facts [49] and Defendant's Local Rule 56.1 statement of additional facts [61].

1

In November 2007, the owners of Maxon Corporation agreed to sell Maxon to Defendant through the Stock Purchase Agreement (SPA) central to this case. [49] ¶ 4. As part of the deal, Maxon's owners appointed Plaintiff to act as their "representative, agent, and attorney-in-fact" in any disputes arising under the SPA. *Id.* ¶ 5. When the sale closed in December 2007, Plaintiff placed $16.725 million into escrow to secure any post-closing claims that Defendant might assert. *Id.* ¶ 6.

Maxon's assets included a large facility in Muncie, Indiana. *Id.* ¶ 7. Before 1965, one section of the facility served as a trucking terminal, complete with a fueling station and underground storage tanks. [61] ¶ 1. Several years after the Maxon sale closed, Defendant found previously undisclosed soil and groundwater contamination in that section of the facility. *Id.* ¶ 3. Defendant wrote to Plaintiff in March 2011 about the contamination. *Id.* Specifically, Defendant told Plaintiff that the levels of benzene and vinyl chloride at the facility exceeded guideline levels set by the Indiana Department of Environmental Management (IDEM) for soil and groundwater cleanup, and that Defendant needed to report the contamination to IDEM pursuant to 327 IAC 2-6.1-1 *et seq.* (the Indiana Spill Rule). *Id.* Defendant reported the contamination to IDEM the same day it wrote to Plaintiff. *Id.* ¶ 4.

IDEM responded quickly and instructed Defendant to submit a written spill report "as required under" the Indiana Spill Rule. *Id.* ¶ 5; [61-4] at 2. Less than two weeks later, IDEM—in accordance with Indiana statutes on hazardous substances—contacted Defendant again to ask Defendant to investigate "the nature and extent of the contamination" at the Muncie facility and submit another written

report. [61] ¶ 6; [49-6]. IDEM also notified Defendant of potential civil penalties for failing to comply with its official request. [49-6].

In April 2011, Defendant sent Plaintiff a claim notice based upon the SPA's indemnification provisions. [61] ¶ 7. That notice provided a preliminary estimate of Defendant's costs for complying with IDEM's cleanup requirements. *Id.* Defendant gave Plaintiff an updated cost estimate a month later. *Id.* ¶ 10. Shortly after, the parties (who had already released most escrow funds) directed the escrow agent to keep $3.26 million in escrow pending further instructions. [49] ¶ 22.

In late 2011, Defendant agreed to enter the Muncie facility into IDEM's Voluntary Remediation Program (VRP), an alternative to the more rigid State Cleanup Program. [61] ¶ 12; *see also* [49-6]. Ultimately, under IDEM's oversight and direction, Defendant investigated the facility further and developed a remediation plan. [61] ¶ 16. Pursuant to its statutory authority, IDEM reviewed and approved the final plan in July 2017. *Id.* ¶ 17. To date, Defendant has incurred over $1.5 million in investigation and remediation costs. *Id.* ¶ 26.

After the parties served written discovery requests in this case, Plaintiff requested a discovery stay to focus on settlement talks. *Id.* ¶ 24. Defendant agreed to the stay, and the parties attended a settlement conference with Magistrate Judge Kim in June 2017. *Id.* ¶¶ 24–25. The parties expressed an interest in continuing talks, so Judge Kim scheduled another settlement conference for October 2017. *Id.* ¶ 25. Plaintiff, however, ended the talks by filing this pre-discovery summary judgment motion in August 2017. *Id.*

## II. Legal Standard

Courts should grant summary judgment when the moving party shows that no genuine dispute exists as to any material fact and the evidence weighs so heavily in the moving party's favor that the moving party "must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also* Fed. R. Civ. P. 56. A genuine dispute as to a material fact exists when, based upon the evidence, a reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 248. To show a genuine dispute as to a material fact, the non-moving party must point to "particular materials in the record," and cannot rely upon the pleadings or speculation. *Olendzki v. Rossi*, 765 F.3d 742, 746 (7th Cir. 2014).

Courts must evaluate evidence in the light most favorable to the non-moving party and must refrain from making credibility determinations or weighing evidence. *Rasho v. Elyea*, 856 F.3d 469, 477 (7th Cir. 2017) (citing *Anderson*, 477 U.S. at 255). The moving party bears the burden of establishing the lack of genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## III. Analysis

### A. Defendant's Motion to Strike

Because Plaintiff's opening brief focused solely on IDEM's guideline levels, *see* [48] at 13 ("The matter before the Court turns on whether" IDEM's guideline levels "are Environmental Laws as defined" in the SPA.), Defendant moved to strike additional arguments that Plaintiff raised in its reply brief. [74] at 3–4. Plaintiff

says that the varying arguments in the reply brief properly respond to subjects that Defendant raised in its response brief. [77] at 2.

Both parties correctly state the general rules applicable here. Although a party raising an argument for the first time in a reply brief generally waives that argument, *Dexia Crédit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010), a reply brief may raise "new" issues when responding to new arguments from the non-moving party's response brief, *Cent. States, Se. & Sw. Areas Pension Fund v. White*, 258 F.3d 636, 640 n.2 (7th Cir. 2001).

Here, most of Plaintiff's reply brief ostensibly responds to Defendant's brief, with one exception. Plaintiff argues that neither equitable nor promissory estoppel prevents it from contesting Defendant's indemnity claim. [70] at 7–8. But Defendant's response brief never mentions estoppel; Defendant asserts estoppel as an affirmative defense in its answer. *See* [66]; [18] at 14. Indeed, Plaintiff admits that Defendant "failed to make any specific argument in support of" its estoppel defense "in the Response." [70] at 7. By Plaintiff's own admission, the estoppel argument does not address an argument made in the response brief. Thus, this Court partially grants Defendant's motion to strike, and strikes the estoppel arguments beginning on page seven of Plaintiff's reply brief.

B.  **Plaintiff's Summary Judgment Motion**

Plaintiff asks this Court to declare that Plaintiff has no duty to indemnify Defendant for any investigation or remediation costs associated with the Muncie facility. [46] at 2. As the moving party, Plaintiff bears the burden of showing that

no genuine dispute exists as to any material fact and the evidence weighs so heavily in its favor that it "must prevail as a matter of law." *Anderson*, 477 U.S. at 252. Plaintiff fails to meet that burden.

### 1. Applicable Law

As a preliminary matter, the SPA contains a choice-of-law provision requiring that New York law govern any disputes about the SPA. [50-1] § 9.6(a). Under Illinois law, which this Court follows on choice-of-law issues when sitting in diversity, courts honor a contract's choice-of-law provision as long as the parties have a valid contract and the chosen law does not violate fundamental Illinois public policy. *See Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 705 (7th Cir. 2004). Because the parties do not contest the SPA's validity, and because nothing in the relevant New York law contradicts Illinois public policy, New York law controls.

Under New York law, this Court may interpret unambiguous contract language as a matter of law. *82-11 Queens Boulevard Realty Corp. v. Sunoco, Inc.*, 951 F. Supp. 2d 376, 381 (E.D.N.Y. 2013). Also, New York law instructs this Court to interpret words and phrases in the SPA using their plain meaning, and to give full meaning and effect to all of the SPA's provisions. *See, e.g.*, *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co., N.A.*, 773 F.3d 110, 114 (2d Cir. 2014); *Malmsteen v. Universal Music Grp., Inc.*, 940 F. Supp. 2d 123, 130 (S.D.N.Y. 2013); *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002). By giving "fair meaning" to all of the SPA's language, this Court should reach a "practical interpretation" that realizes the parties' reasonable expectations in entering the

agreement. *Trbovich v. Trbovich*, 997 N.Y.S.2d 855, 858 (N.Y. App. Div. 2014).

## 2. The SPA

This Court first outlines the contract at issue. The SPA contains several environmental warranties that Maxon's sellers made to Defendant. Most pertinently, the SPA states that, "except as set forth on Schedule 3.2(n)":

- "There are no Hazardous Materials currently present" at the Muncie facility, "except in material compliance with Environmental Laws." [50-1] § 3.2(n)(i).
- "There is no past or current condition" at the Muncie Facility for which Maxon has, "or would have in the future, any Liability under Environmental Laws" or "any obligation to undertake any investigation, cleanup or remedial action pursuant to Environmental Laws." *Id.* § 3.2(n)(iv).

Under the SPA, "Law" means "all laws, statutes, rules, and regulations of federal, state and local governments." *Id.* § 1.1. Schedule 3.2(n) failed to disclose any hazardous materials in the relevant section of the facility. [61] ¶ 18.

Schedule 3.2(n) and section 3.2(n), in turn, connect to the SPA's indemnification provisions, which entitle Defendant to indemnification for losses arising out of:

- "any inaccuracy of a representation or warranty made by [Maxon] set forth in Section 3.2 of this Agreement." [50-1] § 6.1(b).
- "any matter disclosed or required to be disclosed on Schedule 3.2(n)" to "make the representations and warranties set forth in Section 3.2(n) true." *Id.* § 6.1(g).

Defendant seeks indemnification under sections 6.1(b) and (g). [18] at 15–18.

Additionally, Section 6.3(a) of the SPA establishes some limits on indemnity, including that Defendant must make a claim under the SPA's representations and warranties within 42 months of the sale's closing. [50-1] § 6.3(a). The SPA also requires that Defendant assert any "representation or warranty" indemnity claim through a notice "that specifically identifies the particular breach underlying such

7

claim." *Id.* Likewise, the Escrow Agreement, which the SPA incorporates, provides that any claim notice sent to the escrow agent "shall set forth the claim in reasonable detail." [50-3] § 4(c). In conjunction with making an indemnification claim, Defendant shall "use commercially reasonable efforts" to mitigate any losses that it asserts under the SPA. [50-1] §§ 6.3(f), (i).

### 3. Plaintiff's Arguments

In its opening brief, Plaintiff argues that it merits summary judgment because IDEM's guideline levels for benzene and vinyl chloride cleanup (which Defendant cited in its March 2011 notice to Plaintiff about the contamination) are not laws. *See generally* [48]. Specifically, Plaintiff asserts that Defendant offered no other basis for its indemnification claim besides the IDEM guideline levels, and therefore, Defendant cannot show that the contamination violated any of the SPA's warranties about material compliance with environmental laws. *Id.*

Plaintiff's theory, however, fails upon a simple review of the record. Even if one assumes that IDEM's requisite guideline levels are not "laws" under the SPA (which this Court does not find), Defendant's notices clearly identified other environmental laws underlying its indemnification claim. For example, Defendant's March 2011 notice to Plaintiff also cited the Indiana Spill Rule and explained that the rule obligated Defendant to report the contamination to IDEM. [49-5]. In April 2011, Defendant sent Plaintiff another letter detailing the unacceptable levels of benzene and vinyl chloride it found in soil and groundwater; this letter explained that Defendant would seek indemnification under the SPA for costs that Defendant

8

had to incur on IDEM's orders. [49-7].

The SPA requires Defendant to "specifically identify the particular breach" underlying any indemnification claim. [50-1] § 6.3(a). Because the sale closed in December 2007, Defendant had until June 2011—42 months from the closing—to assert an indemnification claim. *Id.* Construing these provisions according to their plain meaning, *Greenfield*, 780 N.E.2d at 170, and interpreting the evidence in the light most favorable to Defendant as the non-moving party, *Anderson*, 477 U.S. at 255, a reasonable factfinder could find that Defendant properly gave notice through its March and April letters and informed Plaintiff of other potential bases for its indemnification claim besides the IDEM guidelines.

Nowhere does the SPA require that a claim notice list every statute that might require Defendant to incur costs; such a reading would "distort the meaning" of the SPA in violation of New York law. *See Tallo v. Tallo*, 991 N.Y.S.2d 500, 501 (N.Y. App. Div. 2014). Rather, the SPA requires Defendant to reasonably and specifically identify any alleged breach, and Defendant did so. Defendant sent multiple letters to Plaintiff identifying the previously undisclosed chemicals it found at the facility, where it found them, and which Indiana rules and regulations obligated it to begin working with IDEM on possible cleanup operations. *See* [49-5, 49-7]. Thus, Defendant identified the "particular breach"—the presence of previously undisclosed chemicals that could lead to liability for investigating and remediating the Muncie facility. At the very least, a genuine issue of material fact

exists as to whether that contamination violated environmental laws. *Anderson*, 477 U.S. at 248.

In its reply brief, Plaintiff also argues that it does not have to indemnify Defendant because Defendant spent $1.5 million on remediation *voluntarily*, without IDEM or any law requiring the spending. [70] at 6–9. In Plaintiff's view, IDEM never obligated Defendant to do anything because the agency merely asked Defendant to investigate and report on the contamination, and never exercised its statutory authority to compel Defendant (through litigation) to remediate the facility. *Id.* at 6 (citing Ind. Code § 13-25-4-9, the State Cleanup Program). Defendant contends that IDEM's simple use of the word "request" fails to change the true nature of the official letters Defendant received, given that IDEM explicitly notified Defendant of potential civil penalties for failing to comply. [66] at 5.

Plaintiff's "voluntary" argument borders upon the frivolous. Even though under New York law, a party who voluntarily makes payments cannot seek indemnification for the loss that it had no obligation to pay, a clear exception to that general rule applies when the party seeking indemnification shows that it made "necessary" payments "to protect its own legal or economic interests." *See Underpinning & Found. Skanska, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 726 F. Supp. 2d 339, 352–53 (S.D.N.Y. 2010) (quoting *Broadway Houston Mack Dev., LLC v. Kohl*, 897 N.Y.S.3d 505, 506 (N.Y. App. Div. 2010)).

Here, Defendant incurred costs after receiving directions from IDEM that cited IDEM's statutory authority to: (1) impose civil penalties if Defendant failed to

provide the requested reports; and (2) hold Defendant liable for any remediation costs that the State of Indiana incurred. [49-6]. Undoubtedly, Defendant would have gone against its own legal and economic interests by refusing to comply with IDEM's "requests" and forcing IDEM to litigate the remediation measures that Defendant should take. *See, e.g., Underpinning*, 726 F. Supp. 2d at 354.

Besides, the SPA itself instructs Defendant to "use commercially reasonable efforts" to mitigate any losses that it asserts under the SPA. [50-1] §§ 6.3(f), (i). This Court must interpret the SPA by assigning words their ordinary meaning and giving full effect to all of the SPA's provisions. *Greenfield*, 780 N.E.2d at 170. Section 6.3(f), read in conjunction with the rest of the SPA, indicates that Defendant may take reasonable steps to mitigate its losses—such as cooperating with IDEM rather than forcing litigation—without forfeiting the right to indemnification.

Finally, Plaintiff argues that the Indiana Spill Rule does not apply here because Defendant does not demonstrate "that any amount of any chemical on the premises was released and exceeded the quantities specified in the Spill Rule which could trigger Honeywell's obligation to report the presence of any chemicals" at the Muncie facility. [70] at 5. This argument flies in the face of both the legal standard at summary judgment and the evidence (scant as it is, given the lack of discovery).

Defendant—the non-moving party—does not have to prove its case at this stage. Rather, Plaintiff bears the burden of establishing the lack of genuine dispute as to any material fact. *Celotex*, 477 U.S. at 323. And this Court must evaluate the evidence in the light most favorable to Defendant. *Anderson*, 477 U.S. at 255.

Viewing the evidence through that lens, Defendant shows that a genuine issue of material fact exists as to whether the contamination at the facility violated the Indiana Spill Rule or other environmental laws, given IDEM's involvement in remediating the facility. *See, e.g.*, [49-6]; [61] ¶¶ 16, 17. Plaintiff chose to proceed on this motion without the benefit of any discovery, and in doing so, deliberately created a herculean task for itself; Plaintiff then failed to offer any evidence whatsoever about whether the benzene and vinyl chloride levels at the facility triggered any obligations under Indiana law. Not surprisingly, Plaintiff fails to prove that no genuine issue of material fact exists as to whether the SPA entitles Defendant to indemnification for its environmental cleanup costs.

## IV. Conclusion

This Court denies Plaintiff's summary judgment motion [46]. As stated in open court on August 29, 2017, Plaintiff may not file any further summary judgment motions in this case, absent good cause and leave of court. This Court partially grants Defendant's motion to strike [74]. The motion hearing set for 2/7/2018 at 9:45 a.m. in Courtroom 1203 is converted to a status hearing. The parties shall come prepared to set case management dates.

Dated: January 29, 2018

Entered:

_____
John Robert Blakey
United States District Judge